LONG VIEW SYSTEMS CORPORATION USA, Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE of Colorado and Gino Lucero, Respondents.

No. 07CA2284.

Colorado Court of Appeals, Div. I.

Oct. 30, 2008.

Sherman & Howard L.L.C., Heather Vickles, Brooke Colaizzi, Denver, Colorado, for Petitioner.

John W. Suthers, Attorney General, Laurie Rottersman, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

No Appearance for Respondent Gino Lucero.

Opinion by Judge TERRY.

In this unemployment compensation case, petitioner, Long View Systems Corporation USA (Long View), seeks review of an order of the Industrial Claim Appeals Office (Panel) affirming a hearing officer's decision that services performed for Long View by Gino Lucero (Lucero) and other similarly situated individuals constituted "employment" under the Colorado Employment Security Act, sections 8–70–101 to –143, C.R.S.2008. We set aside the Panel's order and remand for additional findings.

Lucero signed a "Consulting Services Agreement" with Long View, in which he agreed to provide computer and information systems operating and consulting services. The agreement provided that Lucero's work would commence on January 2, 2007, "and may end as late as March 31, 2007." Lucero was assigned by Long View to work for one of its clients, Anadarko Petroleum (Anadarko). Long View paid Lucero $18 per hour for his work, and Lucero averaged forty hours of work per week.

Following Lucero's completion in April 2007 of work under the consulting agreement, he filed a claim for unemployment benefits. In July 2007, a deputy issued a decision concluding that under section 8–70–115, C.R.S.2008, Lucero and other similarly situated workers were engaged in "employment" with Long View. Accordingly, Long View was responsible for reporting wages paid to all workers in Lucero's class and for paying unemployment insurance taxes on those workers.

Long View appealed the deputy's decision. Following a hearing, the hearing officer found that "[b]ased on a totality of the facts ... direction and control existed in [Lucero's] performance of services." The hearing officer also found there was "no evidence that [Lucero] did work for other companies during [the time he worked for Long View]." Accordingly, the hearing officer affirmed the deputy's decision that, under the statutory scheme, Lucero was employed by Long View.

Long View then sought administrative review of the hearing officer's decision. The Panel first concluded, contrary to Long View's contention, that the consulting agreement did not create a rebuttable presumption of an independent contractor relationship. The Panel further concluded that the hearing officer's findings were not contrary to the weight of the evidence, and that, although the evidence of Lucero's alleged independence was conflicting and subject to contrary inferences, there was "no error in the conclusion that [Lucero] was not an independent contractor and that he was in covered employment."

I.

Long View contends the Panel erred in affirming the hearing officer's decision that Lucero was engaged in "employment" under the statutory scheme. We agree, and therefore set aside the Panel's decision and remand for additional findings.

## A.   Applicable Law

■   Under section 8–70–115(1)(b), C.R.S. 2008, services performed by an individual for another are deemed to be "employment" unless the putative employer can demonstrate both that (1) the individual is free from control and direction in the performance of the service, both under the contract and in fact, and (2) the individual is customarily engaged in an independent trade, occupation, profession, or business related to the service performed. *Speedy Messenger & Delivery Serv. v. Indus. Claim Appeals Office*, 129 P.3d 1094, 1096 (Colo.App.2005).

■   The statute places the burden of proof on the putative employer to demonstrate that both conditions exist. *See id.; see also Home Health Care Prof'ls v. Colo. Dep't of Labor & Employment*, 937 P.2d 851, 853 (Colo.App.1996). The determination as to whether a putative employer has met this burden is a question of fact, and we will not disturb the Panel's determination on appeal if it is supported by substantial evidence. *See Allen Co. v. Indus. Comm'n*, 762 P.2d 677, 680 (Colo.1988); *Locke v. Longacre*, 772 P.2d 685, 686 (Colo.App.1989).

## B.   Consulting Agreement

Long View contends the consulting agreement created a rebuttable presumption of an independent contractor relationship. We disagree.

Under section 8–70–115(1)(c), C.R.S.2008, a putative employer may "evidence" the "control and direction" and "independent trade" conditions of subsection (1)(b) by producing a written document, signed by both parties, that satisfies the applicable enumerated factors demonstrating those conditions. *See Speedy Messenger*, 129 P.3d at 1096; *see also* § 8–70–115(1)(d), C.R.S.2008 (document may satisfy the requirements of subsection (1)(c) if it demonstrates, by a preponderance of the evidence, the existence of the factors that are appropriate to the parties' situation). Under section 8–70–115(1)(c), a written document, signed by both the putative employer and putative employee, will evidence that the latter is engaged in an independent trade, occupation, profession, or business and is free from control in the performance of the service if the document does not:

(I) Require the individual to work exclusively for the person for whom services are performed;  except that the individual may choose to work exclusively for the said person for a finite period of time specified in the document;

(II) Establish a quality standard for the individual;  except that such person can provide plans and specifications regarding the work but cannot oversee the actual work or instruct the individual as to how the work will be performed;

(III) Pay a salary or hourly rate but rather a fixed or contract rate;

(IV) Terminate the work during the contract period unless the individual violates the terms of the contract or fails to produce a result that meets the specifications of the contract;

(V) Provide more than minimal training for the individual;

(VI) Provide tools or benefits to the individual;  except that materials and equipment may be supplied;

(VII) Dictate the time of performance;  except that a completion schedule and a range of mutually agreeable work hours may be established;

(VIII) Pay the individual personally but rather makes checks payable to the trade or business name of the individual;  and

(IX) Combine his business operations in any way with the individual's business, but instead maintains such operations as separate and distinct.

§ 8–70–115(1)(c)(I)–(IX), C.R.S.2008; *see also Speedy Messenger*, 129 P.3d at 1097 (setting forth factors that satisfy requirements of § 8–70–115(1)(c) ).

■   We perceive no error in the Panel's conclusion that the consulting agreement Lucero signed did not create a rebuttable presumption under the statute. As the Panel noted, the agreement did not satisfy the factor set forth in section 8–70–115(1)(c)(III) because Long View paid Lucero an hourly rate rather than a fixed or contract rate. Also, the agreement did not satisfy the factor set forth in section 8–70–115(1)(c) (VIII) be-

cause Long View paid Lucero personally rather than paying him through a trade or business name.

Long View argues that the Panel should have disregarded these two factors because they were "not appropriate to the parties' situation," and contends that (1) it "discussed and negotiated the hourly rate" with Lucero, and (2) "[a] business name is largely a formality." However, we disagree that these assertions, even if true, rendered the two factors inappropriate to the parties' situation in considering whether the writing created the statutory rebuttable presumption.

■ In its reply brief, Long View also asserts that it is "common practice" in the information technology industry to pay contractors at an hourly rate and that "many contractors work in their [personal] name only." However, it did not make these assertions, or present any evidence supporting them, at the hearing. Accordingly, we will not consider them on appeal. *See Goodwill Indus. v. Indus. Claim Appeals Office,* 862 P.2d 1042, 1047 (Colo.App.1993).

Although we agree with Long View's assertion that a writing need not necessarily satisfy all nine factors enumerated in subsection (1)(c) to create the rebuttable presumption, it must satisfy those factors that are applicable or potentially applicable. *See Speedy Messenger,* 129 P.3d at 1096 (putative employer "may produce a written document that satisfies all the applicable factors set forth in [section] 8–70–115(1)(c)"). Contrary to Long View's contention, a factor is not rendered inappropriate or inapplicable to the circumstances simply because an agreement fails to satisfy the factor, or because the factor is alleged to be a mere "formality."

Because the consulting agreement did not satisfy two appropriate factors under section 8–70–115(1)(c), we perceive no error in the Panel's conclusion that the agreement did not establish a rebuttable presumption of an independent contractor relationship under section 8–70–115(2). *See Speedy Messenger,* 129 P.3d at 1097.

## C. "Independent Trade" and "Control and Direction"

Long View also contends the record and the hearing officer's evidentiary findings do not support the ultimate findings regarding the issues of "independent trade" and "control and direction." We agree, and therefore conclude that the matter must be remanded for additional findings.

### 1. Independent Trade

■ The hearing officer made no express determination whether Long View had shown, under section 8–70–115(1)(b), that Lucero was customarily engaged in an independent trade, occupation, profession, or business related to the services performed under the consulting agreement. However, to the extent the hearing officer implicitly determined Long View failed to satisfy this condition, we conclude that the limited evidentiary findings failed to support such a determination and that additional findings are necessary.

■ The statutory requirement that the worker be "customarily engaged" in an independent trade or business is designed to assure that a worker, whose income is almost wholly dependent upon continued employment by a single employer, is protected from the vagaries of involuntary unemployment, irrespective of the worker's status as a "servant" or as an "independent contractor" under the common law. *See Speedy Messenger,* 129 P.3d at 1096; *see also Home Health Care Prof'ls,* 937 P.2d at 853; *Carpet Exch. of Denver, Inc. v. Indus. Claim Appeals Office,* 859 P.2d 278, 282 (Colo.App.1993).

Here, the hearing officer's only finding addressing the "independent trade" issue was that there was no evidence Lucero had worked for other companies during the three-month period he worked under the consulting agreement.

We acknowledge decisions holding that, to be engaged in an independent trade, occupation, profession, or business, workers must actually and customarily provide similar services to others at the same time they work for the putative employer. *See Speedy Messenger,* 129 P.3d at 1098; *Barge v. Indus.*

*Claim Appeals Office,* 905 P.2d 25, 27 (Colo. App.1995); *Carpet Exch. of Denver,* 859 P.2d at 282. However, none of these decisions involved circumstances such as those presented here, where a worker entered into an agreement to work for a relatively short period of time.

We agree with the *Speedy Messenger* division that, to satisfy the independent trade condition, a worker must be engaged in a separate trade or business venture, other than provision of services for the putative employer. *Speedy Messenger,* 129 P.3d at 1098. However, in cases involving short-term contracts for services, we are not persuaded that a lack of contemporaneous work for others is dispositive of whether a worker maintained an independent trade or business. *See* 8–70–115(1)(c)(I) (fact that "individual may choose to work exclusively for [the person for whom services are performed] for a finite period of time specified in [a written] document" does not evidence "control and direction" and does not impede finding that individual is engaged in "independent trade, occupation, profession, or business"); *see also Dep't of Labor v. Fox,* 346 Md. 484, 697 A.2d 478, 485–86 (1997) (listing contemporaneous service provided to more than one unrelated employer as only one of eight statutory factors used in determining whether individual was customarily engaged in an independent business or occupation).

Thus, we conclude the lack of evidence that Lucero also performed similar services for others during the three-month period of the consulting agreement was insufficient to support a determination that Lucero was not customarily engaged in an independent trade, occupation, profession, or business. *Cf. Locke,* 772 P.2d at 687 (affirming determination that, during period claimant was performing services under three-year contract for putative employer, she was not engaged in independent trade or business where evidence showed that contract with putative employer practically prohibited claimant's conduct of any independent profession or business).

Because the hearing officer failed to make any other evidentiary findings regarding the "independent trade" issue, we remand to the Panel, with instructions to remand to the hearing officer, for additional findings on this issue. In making those findings, the hearing officer should consider whether Lucero (1) engaged in a trade, occupation, profession, or business that existed separate and apart from any relationship with a particular employer and that would survive the termination of that relationship; and (2) by reason of his skill, engaged in his own economic enterprise such that he bore the risk of his own unemployment. *See Midland Atlas Co. v. South Dakota Dep't of Labor,* 538 N.W.2d 232, 235–36 (S.D.1995).

In addition to the factors listed in section 8–70–115(1)(c), other relevant factors include whether Lucero maintained a business card, business listing, business address, or business telephone number. *See Speedy Messenger,* 129 P.3d at 1098; *Barge,* 905 P.2d at 27. Additional pertinent factors may include whether Lucero (1) had a financial investment such that he could be vulnerable to suffering a financial loss in connection with performance of the service, (2) had his own equipment needed to perform the service, (3) determined the price of the service to be performed, (4) employed others to perform the service, and (5) carried his own liability or workers' compensation insurance. *See Fox,* 697 A.2d at 485–86.

The hearing officer has discretion to take additional evidence on these issues in order to make the required supplemental findings.

### 2. Control and Direction

Long View contends the hearing officer's evidentiary findings do not support the determination that Long View had the right to direct and control Lucero's work. We agree.

#### a. Whether Long View Controlled Lucero's Work

■ As a preliminary matter, we conclude that, in the absence of a showing that Anadarko was Long View's agent, evidence that Anadarko controlled Lucero's work is not dispositive of whether Long View controlled his work.

The hearing officer specifically found that (1) Anadarko oversaw Lucero's work, (2) the

tools used by Lucero were provided by Anadarko, and (3) the hours or time frames Lucero was required to work were agreed to by Lucero and Anadarko. These findings, which are supported by the record, indicate that it was Anadarko, and not Long View, that directed or controlled Lucero's work. The findings are also consistent with language in the consulting agreement, which specifically provided that "Long View shall not oversee the actual work or instruct [Lucero] as to how the work must be performed." Additionally, the hearing officer found that Lucero was not required to work exclusively for Long View, and it was undisputed that Long View did not provide any training to Lucero.

Although the consulting agreement contained a limited non-competition provision, that provision did not affect the manner in which Lucero performed his work during the term of the agreement, and we are not persuaded that it conclusively demonstrated Lucero's status. *See Colo. Supply Co. v. Stewart*, 797 P.2d 1303, 1305 (Colo.App.1990) (concluding that section 8–2–113, C.R.S.2008, addressing non-compete agreements, applies to independent contractors); *see also Electrolux Corp. v. Commonwealth*, 705 A.2d 1357, 1361 (Pa.Commw.Ct.1998) (mere existence of non-compete clause did not outweigh other factors showing lack of control).

Thus, although the hearing officer determined that "direction and control existed in [Lucero's] performance of services," the overwhelming evidence, as reflected in the hearing officer's own findings of evidentiary fact, established that such direction and control came primarily from Anadarko rather than Long View.

Moreover, insofar as the hearing officer sought to impute or attribute Anadarko's direction and control over Lucero to Long View based upon some form of agency relationship between the two entities, we find no evidence in the record to support the existence of such a relationship. Consequently, we perceive no basis for attributing Anadarko's direction and control over Lucero to Long View. *See Freedom Labor Contractors of Florida, Inc. v. State*, 779 So.2d 663, 665 (Fla.Dist.Ct.App.2001) (given lack of record evidence to support agency relationship between putative employer and its customers, presumed control by customer over mode or details of claimant's work would not be imputed to putative employer).

#### b. Whether Control by Anadarko Precludes Application of Section 8–70–115(1)(b)

Section 8–70–115(1)(b) provides a mechanism for a putative employer to demonstrate that it is not, in fact, an employer. As relevant here, it states:

> Notwithstanding any other provision of this subsection (1) ... service performed by an individual for another shall be deemed to be employment ... unless and until it is shown to the satisfaction of the division that such individual is free from control and direction in the performance of the service, both under his contract for the performance of service and in fact; and such individual is customarily engaged in an independent trade, occupation, profession, or business related to the service performed.

We have already concluded that additional findings must be made regarding whether Lucero was customarily engaged in an independent trade, occupation, profession, or business related to the services performed under the consulting agreement. Because it may arise on remand, we address the further question that would necessarily arise if he were found to be so engaged: whether Long View has met its burden under section 8–70–115(1)(b) of proving that Lucero was not an employee.

■ We requested supplemental briefing to allow the parties to address the following question:

> Assuming a putative employer has satisfied its burden under section 8–70–115(1)(b) ... of proving that the claimant is customarily engaged in an independent trade, occupation, profession, or business related to the services performed, does the putative employer satisfy its further burden under that section to prove that the claimant is free from control and direction in the performance of the service, by prov-

ing that the putative employer did not control or direct the performance of the service, even if a third party does provide such control or direction?

We conclude that the plain language of that section does not support a conclusion that control and direction over a putative employee by someone other than the putative employer renders the situation one of employment, unless the person providing control and direction is shown to be an agent of the putative employer.

Thus, given the absence of evidence that Anadarko—which was found to provide control and direction to Lucero—was Long View's agent in so doing, the mere fact that it did so would not require a finding that Lucero was an employee.

We are not persuaded otherwise by the Division of Employment and Training's citation to section 8–73–105.5, C.R.S.2008. That statute addresses temporary help contracting firms. The Division argues that the statute establishes that Long View subjected Lucero to direction and control, and he was therefore Long View's employee. However, the Division did not raise this statute before the hearing officer or the Panel, and did not present evidence that Long View was a temporary help contracting firm. Even if it had, however, the potential applicability of section 8–73–105.5 to Long View is not conclusive as to whether Lucero was an employee, and would not, by itself, preclude Long View from proving a defense under section 8–70–115(1)(b).

We therefore remand for the Panel to direct the hearing officer to make findings as to the applicability of section 8–70–115(1)(b), in accordance with this opinion. The hearing officer has discretion whether to take additional evidence pertinent to this determination.

## II.

In light of our decision, we need not address Long View's contention that the hearing officer's decision was based solely upon

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

unreliable hearsay evidence in violation of the rule set forth in *Industrial Claims Appeals Office v. Flower Stop Marketing Corp.*, 782 P.2d 13, 18 (Colo.1989).

The order is set aside, and the case is remanded to the Panel with instructions to remand to the hearing officer for additional findings, as specified herein.

Judge HAWTHORNE and Justice ROVIRA * concur.

