**SZL, INC., Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Michael J. Smith, Respondents.**

No. 10CA1197.

Colorado Court of Appeals, Div. III.

March 3, 2011.

Kissinger & Fellman, P.C., Richard P. Kissinger, Bobby G. Riley, Denver, Colorado, for Petitioner.

John W. Suthers, Attorney General, Katie Allison, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

No Appearance for Respondent Michael J. Smith.

Scopelitis, Garvin, Light, Hanson & Feary, LLP, Christopher C. McNatt, Jr., Pasadena, California, for Amici Curiae American Trucking Associations, Inc. and Colorado Motor Carriers' Association.

Opinion by Judge DAILEY.

In this unemployment tax liability case, petitioner, SZL, Inc. (SZL), seeks review of a final order of the Industrial Claim Appeals Office (Panel) affirming a hearing officer's decision ruling that services performed for SZL by respondent, Michael J. Smith (claimant), constituted covered "employment" for such tax purposes under the Colorado Employment Security Act (CESA), pursuant to section 8–70–115(1)(b), C.R.S.2010. We affirm.

## I. Background and Procedural History

Claimant performed services for SZL as an over-the-road truck driver for approximately three months, from December 2008 through March 2009, under a written agreement between the parties and using a truck he leased from SZL.

After he later filed for unemployment benefits, a deputy issued a decision determining that he was not free from control and direction in the performance of these services and that he was not customarily engaged in an independent trade or business related to these services. Consequently, the deputy determined that claimant's services for SZL constituted covered "employment" under section 8–70–115(1)(b), resulting in SZL's responsibility as an employer for payment of unemployment taxes concerning these services. SZL appealed this decision.

Following a two-day evidentiary hearing, the hearing officer similarly determined that claimant was in covered employment under section 8–70–115(1)(b) concerning these services, ruling that he was working as an employee of SZL rather than as an independent contractor for such tax purposes. Based on various factual findings, the hearing officer concluded that claimant was not customarily engaged in an independent business providing similar services, and that he was also subject to "minimal" direction and control in performing these services. SZL again appealed.

On review, the Panel upheld the hearing officer's factual findings. Based on these findings, the Panel ruled that the hearing officer correctly determined that claimant was not customarily engaged in the independent business of providing truck driving services, although the Panel also ruled that it was "doubtful" that the findings supported a conclusion that claimant was subject to control and direction within the meaning of section 8–70–115(1)(b). The Panel further ruled that SZL's remaining contentions were unpersuasive. Consequently, the Panel affirmed the hearing officer's determination that claimant was an employee of SZL rather than an independent contractor for unemployment tax liability purposes under CESA.

*II. Issues Under Section 8–70–115(1)(b)*

We first reject SZL's challenges to the Panel's determination that claimant's services for SZL constituted covered "employment" for unemployment tax liability purposes under section 8–70–115(1)(b).

■ Under section 8–70–115(1)(b), services performed by an individual for another "shall be deemed" to be covered "employment" for unemployment tax liability purposes, unless the putative employer demonstrates both (1) that the individual "is free from control and direction in the performance of the service," and (2) that the individual "is customarily engaged in an independent trade, occupation, profession, or business related to the service performed."

The statute places the burden of proof on the putative employer to demonstrate that both conditions exist in order to rebut the presumption of an employment relationship between the parties. *Long View Sys. Corp. USA v. Indus. Claim Appeals Office,* 197 P.3d 295, 298 (Colo.App.2008); *Barge v. Indus. Claim Appeals Office,* 905 P.2d 25, 27 (Colo.App.1995).

■ The determination as to whether a putative employer has met this burden is a question of fact. Consequently, the Panel's determination concerning this issue may not be disturbed on appeal if it is supported by substantial evidence in the record. *See Long View,* 197 P.3d at 298.

We perceive no error in the Panel's determination that SZL failed to establish the second condition of this two-part statutory test concerning claimant's services for SZL.

■ To establish that a worker is "customarily" engaged in an "independent" business related to the services performed as required under section 8–70–115(1)(b), the putative employer must show that the worker is engaged in a separate business venture, other than the provision of services for the putative employer, while the worker is providing such services for the putative employer. *See Long View,* 197 P.3d at 300; *Speedy Messenger & Delivery Serv. v. Indus. Claim Appeals Office,* 129 P.3d 1094, 1098 (Colo.App. 2005).

The purpose of this requirement is to assure that workers whose income is almost wholly dependent upon continued employment by a single employer are protected from the vagaries of involuntary unemployment, regardless of their status as employees or independent contractors under the common law. *See Speedy Messenger,* 129 P.3d at 1096; *Barge,* 905 P.2d at 27.

■ Consequently, several cases have held that, to satisfy this requirement, a worker must actually and customarily provide similar services to others at the same time he or she works for the putative employer. *See, e.g., Barge,* 905 P.2d at 27; *Carpet Exch. of Denver, Inc. v. Indus. Claim Appeals Office,* 859 P.2d 278, 282 (Colo.App.1993). However, in cases involving an agreement to work for a relatively short period of time, a lack of contemporaneous work for others is not dis-

positive of the issue. *See Long View*, 197 P.3d at 300 (involving a three-month period of work).

■ Included among the statutory factors indicating that an individual is engaged in an independent business are whether the putative employer does not require the individual to work exclusively for it, and whether the putative employer does not pay the individual personally but rather by payment to a trade or business name for the individual. *See* § 8–70–115(1)(c)(I), (1)(c) (VIII), C.R.S.2010. Another relevant consideration is whether the worker engaged in a business venture that existed separate and apart from any relationship with a particular employer and that would survive the termination of that relationship. Other relevant factors may include whether the worker maintained a business card, business listing, business address, or business telephone number, and whether the worker had his or her own equipment needed to perform the service. *See Long View*, 197 P.3d at 300.

■ Here, the hearing officer largely credited the evidence indicating that claimant performed services for SZL as an employee, while not crediting much of the evidence indicating otherwise. Specifically, the hearing officer found that, during the three months claimant performed services for SZL, he did not do any work for any other companies. The hearing officer found that, in performing truck driving services for SZL, claimant had only the truck he leased from SZL and was required by the lease agreement to use it only for SZL, and that the services were performed in the name of SZL. The hearing officer further found that claimant did not have his own business or business name, and that he was paid by SZL by checks made to his own name. Finally, the hearing officer found that, in his last job before working for SZL, claimant worked as an employee for another company performing truck driving services for two years.

All of these factual findings are supported by substantial evidence in the record from the hearing. Consequently, these findings are binding on review. *See* § 8–74–107(4), C.R.S.2010; *Speedy Messenger*, 129 P.3d at 1098; *Barge*, 905 P.2d at 27.

We also agree with the Panel that these factual findings support the conclusion that claimant was not customarily engaged in an independent business related to the services he performed for SZL.

Contrary to SZL's argument, this determination was not based solely on the lack of contemporaneous work for others while he performed services for SZL. Rather, as noted by the Panel, there was no indication that claimant operated a business providing truck driving services immediately before or after his association with SZL, and during that time claimant could not use the leased equipment to provide services for others and lacked equipment of his own to provide such services. Under these circumstances, the Panel's determination in this regard may not be disturbed on appeal. *See* § 8–74–107(6), C.R.S.2010; *Speedy Messenger*, 129 P.3d at 1098; *Barge*, 905 P.2d at 27.

Finally, because the determination concerning the independent trade or business condition of the two-part statutory test is dispositive of SZL's challenges to unemployment tax liability under section 8–70–115(1)(b) concerning claimant's services, we need not address the parties' arguments concerning the direction and control issues. *See Speedy Messenger*, 129 P.3d at 1098; *Barge*, 905 P.2d at 27.

### III. Allegedly Conflicting Statutory and Regulatory Provisions

Next, we reject SZL's argument that imposing unemployment tax liability on it under section 8–70–115(1)(b) as to claimant's services for SZL as a truck driver conflicts with other statutory and regulatory provisions concerning the trucking industry set forth in sections 40–11.5–101 and –102, C.R.S.2010, and 49 C.F.R. § 376 (2009).

In particular, SZL asserts that the lease provisions requiring claimant to use the leased truck exclusively for SZL are authorized by these statutory provisions and are required by these federal regulations. Nevertheless, we perceive no conflict between these statutory and regulatory provisions generally authorizing and requiring such exclusive use lease provisions in the trucking

industry and the determination under section 8–70–115(1)(b) that claimant was an employee rather than an independent contractor for unemployment tax liability purposes under the record in this case.

### A. Regulatory Provisions of 49 C.F.R. § 376

As noted by SZL, the exclusive use requirement in the lease concerning the truck was required by federal regulation, as 49 C.F.R. § 376.12(c)(1) provides that a lease must provide that the authorized carrier shall have exclusive possession, control, and use of the leased equipment for the duration of the lease. However, 49 C.F.R. § 376.12(c)(4) also expressly provides that "[n]othing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee."

Consequently, these regulations, by their own terms, expressly disclaim any conflict between the requirements they impose and any determination concerning the status of a truck driver as an independent contractor or an employee.

### B. Statutory Provisions of Section 40–11.5–102

As to the other statutory provisions cited by SZL, section 40–11.5–101 provides that motor carriers "may" use independent contractors, and section 40–11.5–102(1), C.R.S. 2010, provides that leases between motor carriers and independent contractors "may" contain the provisions specified in paragraphs (a) through (k) of this subsection. These authorized lease provisions include those set forth in section 40–11.5–102(1)(i), C.R.S.2010, which provides that lease provisions between motor carriers and independent contractors may require an independent contractor to work only for the carrier as a driver while the independent contractor is operating the motor vehicle pursuant to the lease.

Moreover, section 40–11.5–102(4), C.R.S. 2010, provides that leases containing the provisions specified in "paragraphs (a), (b), (e),

(f), (g), (h), and (i)" of section 40–11.5–102(4) "shall be presumed prima facie evidence of an independent contractor relationship between the parties to the lease." Section 40–11.5–102(4) further provides that this presumption may be overcome by clear and convincing evidence of an employment relationship between the parties to the lease "considering only factors not in the lease."

█ Contrary to the position taken in the Panel's answer brief, we conclude that, under qualifying circumstances, the presumption of an independent contractor relationship under section 40–11.5–102(4) could apply to the determination of the status of a worker as an employee or independent contractor for unemployment tax liability purposes. *See Frank C. Klein & Co. v. Colo. Comp. Ins. Auth.,* 859 P.2d 323, 325–26 (Colo.App.1993) (holding that provisions of section 40–11.5–102 are applicable to the determination of the status of truck drivers as employees or independent contractors under the Workers' Compensation Act, and discussing legislative history indicating intent to apply these provisions both to workers' compensation and unemployment compensation matters); *see also* Ch. 296, sec. 1, § 40–11.5–102, 1990 Colo. Sess. Laws 1762 (original enactment of these provisions was part of a bill amending various provisions of CESA).

Thus, if all of the necessary conditions concerning lease provisions are satisfied, a presumption of an independent contractor relationship can arise under section 40–11.5–102(4), which would conflict with, and take precedence over, the otherwise applicable two-part statutory test under section 8–70–115(1)(b) for unemployment tax liability purposes. However, the record in this case does not show the applicability of this presumption and this conflict.

In particular, among the necessary conditions for the presumption under section 40–11.5–102(4) to arise is that the lease contain the provisions specified in section 40–11.5–102(1)(a), C.R.S.2010. These statutory provisions, in turn, distinguish between taxi or limousine carriers and other motor carriers; as to independent contractors working with carriers other than taxi or limousine carriers,

the only authorized lease provisions involve vehicles owned by the independent contractor and leased to the carrier, and do not include lease provisions involving vehicles owned by the carrier and leased from it. *Compare* § 40–11.5–102(1)(a)(I) (provisions involving taxi or limousine carriers) *with* § 40–11.5–102(1)(a)(II) (provisions involving other carriers).

■ Here, because claimant did not own the truck but rather leased it from SZL, which is not a taxi or limousine carrier, the lease in this case did not contain the provisions specified in section 40–11.5–102(1)(a). Consequently, the presumption under section 40–11.5–102(4) and the potential conflict from these provisions did not arise.

■ Moreover, absent any presumption arising under section 40–11.5–102(4), we perceive no conflict in the provisions of section 40–11.5–102(1)(i) generally authorizing exclusive use lease provisions with any determination concerning the status of truck drivers as employees or independent contractors under the two-part test of section 8–70–115(1)(b). Contrary to SZL's argument, we perceive no legal basis for excluding from consideration claimant's lack of contemporaneous work for others in determining whether he was customarily engaged in an independent business during that time, notwithstanding the other laws concerning the trucking industry.

In this regard, we first note that, absent any presumption arising under section 40–11.5–102(4), the terms of section 40–11.5–102(1)(i) authorizing certain lease provisions do not, standing alone, bar consideration of such provisions in making determinations concerning a worker's status for unemployment tax liability purposes.

Further, as noted by the Panel, section 8–70–115(1)(b) also expressly provides for the exclusion from consideration of the "degree of control" exercised by a putative employer over the performance of the service or over the worker, when exercised pursuant to the requirements of any state or federal statute or regulation. However, although this exclusion impacts the first part of the two-part test under section 8–70–115(1)(b) concerning control and direction, there is no similar ex-

clusion from consideration of any requirements from other laws concerning the second part of this test as to whether the worker is customarily engaged in an independent business.

### C. *Additional Considerations*

■ In rejecting SZL's arguments concerning alleged conflicts with other laws, we also note that it is legally permissible for an individual to be an employee for unemployment tax liability purposes at the same time the individual is considered to be an independent contractor for other purposes under other laws. *See* § 8–70–115(1)(b) (defining "employment" for unemployment tax liability purposes, "irrespective of whether the common-law relationship of master and servant exists"); *Jackson Cartage, Inc. v. Van Noy,* 738 P.2d 47, 48–49 (Colo.App.1987) (driver was in covered "employment" for unemployment tax liability purposes despite working under an agreement stating that parties intended to create an independent contractor relationship); *see also Home Health Care Prof'ls v. Colo. Dep't of Labor & Employment,* 937 P.2d 851, 853 (Colo.App.1996).

Next, we emphasize the limited nature of our holding in this case. Under the circumstances shown by the record here, we are upholding the determination that claimant was in covered employment for unemployment tax liability purposes as to his services for SZL, but that is not to say, as SZL appears to assert, that motor carriers and drivers may not establish independent contractor relationships for such tax purposes under different circumstances involving leased equipment, leasing provisions, and drivers operating independent business ventures.

For example, notwithstanding the exclusive use lease provisions, if claimant had hired other workers to perform the truck driving services for SZL or had owned other trucks he could have used in performing services for others, he may have been found to be customarily engaged in an independent business. Similarly, if claimant had clearly been operating an independent business venture before, during, and after his association with SZL, advertising his services and being

paid using a business name, he may have been found to satisfy the second part of the two-part test despite his lack of contemporaneous work for others while performing services for SZL.

On the record in this case, however, SZL failed to establish that claimant was customarily engaged in an independent business in performing these services, and the determination that claimant was in covered employment for unemployment tax liability purposes does not conflict with other laws.

█ Finally, we note that, as indicated above, the determination of the status of a truck driver for unemployment tax liability purposes depends on the facts in each particular case, and courts have ruled on either side of the issue concerning whether a truck driver is an employee or an independent contractor for such purposes under different factual circumstances and statutory schemes. *See* Debra T. Landis, Annotation, *Unemployment Compensation: Trucker as Employee or Independent Contractor,* 2 A.L.R.4th 1219 (1980) (collecting cases on either side of the issue).

### IV. Issues Under Section 8–70–140.8

We also reject SZL's argument that the provisions of section 8–70–140.8, C.R.S.2010, govern the determination as to whether claimant's services for SZL constituted covered "employment" for unemployment tax liability purposes, rather than the provisions of section 8–70–115(1)(b), and that claimant was not in covered "employment" because he performed these services as a sole proprietor.

Section 8–70–140.8 is part of CESA, and provides that the term "employment" in CESA "does not include services performed by members of a limited liability company, sole proprietors, or partners in a partnership."

█ In this case, however, the hearing officer did not credit the evidence presented by SZL indicating that claimant was acting as a sole proprietor in performing services for SZL. Rather, as stated previously, the hearing officer found that claimant was not

engaged in a separate business venture in performing these services.

Contrary to SZL's argument, claimant did not "admittedly" operate a sole proprietorship in performing services for SZL. Rather, the evidence, and the permissible inferences from the evidence, were conflicting on this point.

In particular, when asked directly on direct examination whether he had his own business, claimant testified that he did not. Claimant further testified that he did not advertise any kind of business to the general public, and that he did not have any company name, performing these services instead under SZL's name. Moreover, on cross-examination, when asked directly whether he was a sole proprietor in his relationship with SZL after acknowledging that would mean a company in which he was the sole owner and operator, claimant testified only that he was a "sole operator" in that relationship.

The hearing officer is the finder of fact in unemployment proceedings, and his or her resolution of the conflicts in the evidence presented against SZL's position on this point may not be disturbed on review. *See Tilley v. Indus. Claim Appeals Office,* 924 P.2d 1173, 1177 (Colo.App.1996).

Consequently, because claimant was not found to have been acting as a sole proprietor in performing services for SZL, there is no basis under the provisions of section 8–70–140.8 for determining that these services were not covered "employment" for unemployment tax liability purposes under CESA.

### V. Federal Preemption Issues

█ SZL also contends that the determination that claimant was in covered "employment" for unemployment tax liability purposes under CESA is preempted by 49 U.S.C. § 14501(c)(1) and its prohibition against a state enforcing a law related to an interstate motor carrier's prices, routes, or services. Again, we disagree.

In relevant part, 49 U.S.C. § 14501(c)(1) provides that "a State ... may not enact or enforce a law ... related to a price, route, or service of any motor carrier ... with respect to the transportation of property."

In *Western Ports Transportation, Inc. v. Employment Security Department*, 110 Wash.App. 440, 41 P.3d 510 (2002), a Washington state court rejected a similar argument that the imposition of unemployment tax liability under that state's scheme against a carrier concerning a truck driver was preempted by federal law, including 49 U.S.C. § 14501(c)(1).

Noting that the preemption issue under 49 U.S.C. § 14501(c)(1) ultimately turns on Congressional intent, the *Western Ports* court declined to infer that Congress, in enacting this provision, intended to preempt state unemployment law. The *Western Ports* court further ruled that these two types of statutes have very different policy objectives, as federal transportation law promotes public safety and provides for the easy flow of goods in interstate commerce, while state unemployment law provides temporary assistance to workers during periods of involuntary unemployment and must conform in certain respects to federal unemployment statutory provisions. Consequently, the *Western Ports* court held that federal law under 49 U.S.C. § 14501(c)(1) does not preempt state employment security law by which a worker who might be an independent contractor under federal transportation or common-law principles may nevertheless be entitled to unemployment compensation. *Western Ports*, 41 P.3d at 513, 518–19.

We find the analysis of this issue by the *Western Ports* court to be persuasive, and we similarly hold that 49 U.S.C. § 14501(c)(1) does not preempt the determination that claimant was in covered "employment" for unemployment tax liability purposes under CESA. *See also Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 371, 375, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008) (ruling that 49 U.S.C. § 14501(c)(1) preempts state laws whose effect have a "significant impact" on carrier rates, routes, or services related to Congress' deregulatory and preemption-related objectives, and does not preempt state laws that affect rates, routes, or services in a "tenuous, remote, or peripheral" manner).

### VI. Alleged Violation of Freedom to Contract

We next reject SZL's argument that the Panel effectively violated the parties' freedom to contract in determining that claimant was an employee of SZL for unemployment tax liability purposes when the parties intended and contractually agreed to an independent contractor relationship.

In this regard, we again note that a worker may be considered to be an employee for unemployment tax liability purposes even though, for other purposes under other laws, the worker may be considered to be an independent contractor. *See* § 8–70–115(1)(b); *Jackson Cartage*, 738 P.2d at 48–49.

■ Moreover, the imposition of unemployment tax liability on a putative employer concerning services performed by individuals working under a contract purporting to create an independent contractor relationship between the parties does not abrogate constitutional provisions concerning the sanctity of contracts. *Weitzel Redi–Mix, Inc. v. Indus. Comm'n*, 728 P.2d 364, 365–66 (Colo.App. 1986); *see also Cordova v. Indus. Comm'n*, 706 P.2d 810, 812 (Colo.App.1985) (the positions taken by the parties, whether the same or different, are not determinative as to issues under CESA).

### VII. Irregularities in Transcript

SZL also contends that it has been denied procedural due process on review because of certain gaps in the transcript of the evidentiary hearing. We perceive no reversible error in this regard.

■ As noted by SZL, the record shows that approximately four and a half minutes of the first day of the hearing could not be transcribed, and this missing portion of the transcript occurred during SZL's cross-examination of claimant. Nevertheless, in our view SZL has failed to demonstrate how it has been prejudiced by the missing portion of the transcript, and the rest of the record is fully sufficient to permit review of the dispositive issues on appeal. *See Goodwill Indus. v. Indus. Claim Appeals Office*, 862 P.2d 1042, 1045–46 (Colo.App.1993) (no reversible error despite twelve-minute gap in transcript of unemployment hearing).

*VIII.  Additional Issues Raised
by Amici Curiae*

Finally, we note that the amici curiae have raised extensive additional issues in their brief that go beyond the issues raised by the parties to this appeal. We will not consider these additional issues, because only the issues raised by the parties are properly before us. *See Gorman v. Tucker,* 961 P.2d 1126, 1131 (Colo.1998); *D.R. Horton, Inc.— Denver v. Bischof & Coffman Constr., LLC,* 217 P.3d 1262, 1267 (Colo.App.2009).

Accordingly, the Panel's order is affirmed.

Judge J. JONES and Judge LICHTENSTEIN concur.