2012 COA 97

**SOFTROCK GEOLOGICAL SERVICES, INC., Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Division of Employment and Training, Respondents.**

**No. 11CA2331.**

Colorado Court of Appeals, Div. IV.

June 7, 2012.

Bechtel & Santo, L.L.P., Michael C. Santo, Alicia M. Williams, Grand Junction, Colorado, for Petitioner.

John W. Suthers, Attorney General, Tricia A. Leakey, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

No Appearance for Respondent Division of Employment and Training.

Opinion by Judge WEBB.

¶ 1 In this unemployment tax liability case, petitioner, Softrock Geological Services, Inc., seeks review of a final order of the Industrial Claim Appeals Office (Panel) reversing a hearing officer's decision and concluding that services performed for Softrock by Waterman Guy Ormsby constituted covered "employment" under the Colorado Employment Security Act (Act), sections 8–70–101 to 8–82–105, C.R.S.2011. We vacate and remand to the Panel.

I. Factual and Procedural Background

¶ 2 Softrock provides geological services in the oil and gas industry. Ormsby is a geologist who provided well site services to Softrock on a project basis from 2007 through 2010, the relevant period for purposes of this case, under a written agreement with Softrock. Softrock did not train him. Ormsby used his own vehicle, clothing, tools, and

equipment, except for certain specialized and expensive laboratory equipment that he rented from Softrock. Ormsby had his own business cards, paid his own liability insurance, and did not represent himself to be a Softrock employee.

¶ 3 In March 2011, the Division of Employment conducted an audit of Softrock and issued a notice of liability, finding that Ormsby was a covered employee for purposes of the Act. Softrock appealed that decision and obtained a hearing.

¶ 4 The hearing officer reversed the Division's decision. The hearing officer concluded that the written agreement between the parties conformed to section 8–70–115(1)(d), C.R.S.2011, thereby creating a rebuttable presumption of independent contractor status. The hearing officer found that Ormsby was not subject to the direction and control of Softrock and that he was engaged in an independent trade or business. As to the latter requirement, the hearing officer also found that:

> although the worker did not perform services for other geological service companies during the audit period, the worker intended to provide services for such companies had he known of their existence. The worker has demonstrated that he has since entered into such a contract with another company. The hearing officer concludes that had the worker been aware of other similar companies he could have obtained such contracts previously.

¶ 5 On review, the Panel agreed that Ormsby had not been under the direction and control of Softrock. Nevertheless, the Panel reversed the hearing officer's decision on the ground that Ormsby's business as a geologist did not survive independently of his relationship with Softrock, because he provided services only to Softrock between 2007 and 2010. Solely on this basis, the Panel determined that Ormsby was not customarily engaged in an independent profession or business performing services similar to the services he performed for Softrock, and therefore was an employee under the Act.

## II.  Analysis

¶ 6 Softrock contends the Panel erred by substituting its findings of fact for those of the hearing officer and in using only one factor to hold that Ormsby was not customarily engaged in an independent trade or business. We conclude that the Panel improperly based its determination on only one factor. Because this conclusion requires us to remand for the Panel to consider other factors, addressing Softrock's first contention would be premature.

### A.  Legal Framework

¶ 7 Under section 8–70–115(1)(b), C.R.S.2011, services performed by a worker for another "shall be deemed" to be covered "employment" for unemployment tax liability purposes, unless the putative employer proves both that (1) the individual "is free from control and direction in the performance of the service" and (2) the individual "is customarily engaged in an independent trade, occupation, profession, or business related to the service performed." See Speedy Messenger & Delivery Serv. v. Indus. Claim Appeals Office, 129 P.3d 1094, 1096 (Colo. App.2005).

¶ 8 The putative employer must overcome a rebuttable presumption of an employment relationship. Long View Sys. Corp. USA v. Indus. Claim Appeals Office, 197 P.3d 295, 298 (Colo.App.2008); Barge v. Indus. Claim Appeals Office, 905 P.2d 25, 27 (Colo.App.1995). The putative employer can do so based on evidence of a contract with the worker that conforms to section 8–70–115(1)(d). See Home Health Care Prof'ls v. Colo. Dep't of Labor & Emp't, 937 P.2d 851, 854 (Colo.App.1996). Even where the putative employer has rebutted the presumption, the trier of fact must still determine whether the worker is free from control and direction, and is customarily engaged in an independent trade, occupation, profession, or business related to the service performed. Speedy Messenger, 129 P.3d at 1097.

¶ 9 The existence of an employment relationship is a question of fact. See Long View, 197 P.3d at 298. The Panel may reverse a decision of the hearing officer if it

concludes that the findings of the hearing officer are contrary to the weight of the evidence. *See Locke v. Longacre,* 772 P.2d 685, 686 (Colo.App.1989). In turn, we will uphold the Panel's decision if it applies the law correctly and is supported by substantial evidence in the record. *See Long View,* 197 P.3d at 298; *Locke,* 772 P.2d at 686.

## B. Independent Trade or Business

■■■ ¶ 10 To show that a worker is "customarily" engaged in an "independent" business related to the services performed, as required under section 8–70–115(1)(b), the putative employer must show that the worker is engaged in a separate business venture, other than the provision of services for the putative employer. *See Long View,* 197 P.3d at 300; *Speedy Messenger,* 129 P.3d at 1098; *Locke,* 772 P.2d at 686. This determination involves a multi-factor test. *See* § 8–70–115(1)(c), C.R.S.2011[1]; *SZL, Inc. v. Indus. Claim Appeals Office,* 254 P.3d 1180, 1184 (Colo.App.2011). "No one factor is determinative as to whether a person is an employer as opposed to being an independent contractor." *Dana's Housekeeping v. Butterfield,* 807 P.2d 1218, 1220 (Colo.App.1990).

¶ 11 Several divisions of this court have explained the purpose of the requirement that a worker is customarily engaged in an independent business or profession as assuring that workers whose incomes are almost wholly dependent on continued employment by a single employer are protected from the vagaries of involuntary unemployment, regardless of their status as employees or independent contractors under the common law. *See, e.g., Speedy Messenger,* 129 P.3d at 1096; *Barge,* 905 P.2d at 27.

¶ 12 These divisions, among others, have also explained that to satisfy this requirement, a worker must actually provide similar services to others at the same time he or she works for the putative employer. *See Speedy Messenger,* 129 P.3d at 1098; *Barge,* 905 P.2d at 27. However, where the worker has entered into an agreement to work exclusively for the putative employer for a relatively short period of time, the failure of the worker to provide similar services to others at the same time has not been treated as dispositive. *See SZL,* 254 P.3d at 1184 (claimant performed services exclusively for the putative employer as an over-the-road truck driver for a three-month period); *Long View,* 197 P.3d at 300 (exclusive contract to provide computer and information systems operating and consulting services for a three-month period).

■■ ¶ 13 As correctly noted by the Panel, Ormsby's relationship with Softrock was significantly longer than the contracts in *Long View* and *SZL.* He entered into a series of one-year contracts with Softrock, accepting various short-term assignments during the contract periods and rejecting other assignments offered by Softrock. Therefore, we agree with the Panel that *SZL* and *Long View* are distinguishable.

¶ 14 That Ormsby provided no services to others between 2007 and 2010 is undisputed. He testified that during this period he would find work in the restaurant or retail fields when he was not working for Softrock because he was unaware if similar work was available in the area. According to Ormsby's tax and employment records, he obtained most of his income from Softrock during that period. Therefore, relying only on the actually provided services to others test, we also

1. The factors are: "(I) Require the individual to work exclusively for the person for whom services are performed; except that the individual may choose to work exclusively for the said person for a finite period of time specified in the document; (II) Establish a quality standard for the individual; except that such person can provide plans and specifications regarding the work but cannot oversee the actual work or instruct the individual as to how the work will be performed; (III) Pay a salary or hourly rate but rather a fixed or contract rate; (IV) Terminate the work during the contract period unless the individual violates the terms of the contract or fails to produce a result that meets the specifications of the contract; (V) Provide more than minimal training for the individual; (VI) Provide tools or benefits to the individual; except that materials and equipment may be supplied; (VII) Dictate the time of performance; except that a completion schedule and a range of mutually agreeable work hours may be established; (VIII) Pay the individual personally but rather makes checks payable to the trade or business name of the individual; and (IX) Combine his business operations in any way with the individual's business, but instead maintains such operations as separate and distinct."

agree with the Panel that Ormsby was not customarily engaged in an independent trade, occupation, profession, or business.

¶ 15 Nevertheless, Softrock argues that Ormsby's failure to perform similar work for anyone else during the audit period is not dispositive. Instead, it continues, the case should be either reversed because most other factors support its position that Ormsby was an independent contractor, or remanded with directions that the Panel consider other factors. For the following reasons, we agree that a remand is necessary.

¶ 16 Softrock's argument requires us to examine the origins and bases for the statements that the worker must have actually provided similar services to others. Before examining the case law, we make three observations. First, no such test appears in the Act. Second, treating this or any other any single factor as determinative of whether a worker "is engaged in an independent trade, occupation, profession, or business" would be difficult to reconcile with the legislature having provided nine factors in section 8–70–115(1)(c) for the putative employer to show that the worker is so engaged. Third, under one of these factors, the worker "may choose to work exclusively for [the putative employer] for a finite period of time specified" in a written contract, § 8–70–115(1)(c)(I), which "does not impede [a] finding that [the worker] is engaged in [an] 'independent trade, occupation, profession, or business.'" *Long View*, 197 P.3d at 300. These observations suggest that whether the worker has provided similar services to others is at most only one consideration.

¶ 17 Our supreme court has never articulated or approved the "actually have provided services for others" test. Hence, we view such statements by other divisions of this court through the prism that "we are not bound by the decision of another division of this court." *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1195 (Colo.App. 2011).

¶ 18 This test first appears in *Carpet Exchange of Denver, Inc. v. Industrial Claim Appeals Office*, 859 P.2d 278, 282 (Colo.App. 1993) (*Carpet Exchange* test):

To be customarily engaged in an independent business, a worker must actually and customarily provide similar services to others at the same time he or she works for the putative employer. *Locke v. Longacre*, 772 P.2d 685 (Colo.App.1989); *see National Claims Associates, Inc. v. Division of Employment*, 786 P.2d 495 (Colo.App. 1989).

However, the decision in *Locke*, 772 P.2d at 687, does not fully support the division's statement that a worker must provide similar services to others. Instead it said only, "[f]urthermore, to be 'customarily' engaged in an independent business, a claimant must be engaged in the business venture at the same time claimant is providing the services for the employer." Nor does the decision in *National Claims*, provide adequate support. The division, citing *Locke*, addressed only sufficiency of the evidence. It observed, as to one worker, "there was no evidence of the amount of time or work she provided the [other] company," and as to the other, "[a]lthough she solicited some clients directly, her services were performed under National's name, and she was paid the same regardless of whether she or National obtained the work." 786 P.2d at 497.

¶ 19 The next iteration of this test appears in *Barge*, 905 P.2d at 27 ("To be customarily engaged in an independent business, a worker must actually and customarily provide similar services to others at the same time he works for the putative employer."). *Barge* cited *Carpet Exchange, Locke*, and *National Claims*. But as indicated, these cases do not provide a sufficient legal basis for displacing the multiple factors in section 8–70–115(1)(c) with a dispositive "provide similar services for others" test.

¶ 20 Nor is this phrase a useful categorization of the factual variations in these cases.

- In *Carpet Exchange*, 859 P.2d at 282, installers who performed only "occasional installations for others" were employees, while installers who performed "a substantial percentage of their service for others" were independent contractors.

- In *Barge*, 905 P.2d at 26, musicians were covered employees because they had

"earned 95 to 99 percent of their income" from the putative employer.

- And in *Locke,* 772 P.2d at 687, a nurse was a covered employee because a contract required her to be available on a 24–hour basis, thus "practically prohibit[ing] claimant's conduct of any independent profession or business."

¶ 21 As a matter of policy, the *Carpet Exchange* test would be consistent with the "safety net" analysis derived from *Auto Damage Appraisers, Inc. v. Industrial Commission,* 666 P.2d 1113, 1114 (Colo.App.1983) (disapproving a "contract that would place in jeopardy the security of employees who, as in the case here, received substantially all of their compensation through the services rendered to the employer"). As explained in *Home Health,* 937 P.2d at 853:

> Opinions from this court have uniformly determined that the requirement that the worker be "customarily engaged" in an independent trade or business is designed to assure that a worker, whose income is almost wholly dependent upon continued employment by a single employer, is protected from the vagaries of involuntary unemployment, irrespective of the worker's status as a "servant" or as an "independent contractor" under the common law.

¶ 22 Again, however, this explanation of the statute's purpose is not traceable to specific statutory language, and does not supersede the statute's actual language. Nor does it derive from a statement of our supreme court. And it ignores the possibility that the worker may have, "by reason of his skill, engaged in his own economic enterprise such that he bore the risk of his own unemployment." *Long View,* 197 P.3d at 300.

¶ 23 Resolving covered employee versus independent contractor questions solely on the basis of protecting workers "from the vagaries of involuntary unemployment" might be consistent with the general principle that "[t]he benefits sections should be construed liberally in order to further the remedial and beneficent purposes of lightening the burden of unemployment on those who are involuntarily unemployed." *Colo. Div. of Emp't & Training v. Accord Human*

*Resources, Inc.,* 2012 CO 15, ¶ 11, 270 P.3d 985. But this principle does not trump the Act's "direct, unambiguous language." *Mountain States Tel. & Tel. Co. v. Dep't of Labor & Emp't,* 38 Colo.App. 298, 300, 559 P.2d 252, 254 (1976).

¶ 24 Therefore, our analysis returns to the nine factors in section 8–70–115(1)(c) relevant to determining whether the worker is "customarily engaged in an independent trade, occupation, profession, or business." One of them, as indicated, allows the worker "to work exclusively" for the putative employer, yet still be an independent contractor. § 8–70–115(1)(c)(I). This language is unambiguous. *Cf. Dow Chem. Co. v. Gabel,* 746 P.2d 1357, 1360 (Colo.App.1987) ("While we recognize that the Workmen's Compensation Act must be liberally construed to accomplish its humanitarian purpose, nevertheless, if the language is clear and no absurdity is involved, a forced, strained, or unusual interpretation may not be resorted to in order to reach a result favorable to an employee or his dependents.").

¶ 25 Further, Softrock advances the following equally persuasive policy counterargument for why the *Carpet Exchange* test is flawed. Under the test, an employer that wishes to avoid liability under the Act could establish a part-time relationship with a worker whom it perceived to be an independent contractor using an agreement conforming to section 8–70–115(1)(d). The employer could then ensure that its actual relationship with the worker comported with the agreement. *See Locke,* 772 P.2d at 686 ("The primary concern is what is done under the contract and not what it says."). Yet the employer would be subject to such liability—including penalties—where, as here, a retrospective inquiry discloses a single dispositive factor that the employer did not know and could not control: whether the worker was simultaneously performing similar services for others.

¶ 26 In sum, because we conclude that the Panel erred in failing to consider all statutory factors in determining whether Ormsby was engaged in an independent business or profession for purposes of the Act, its deci-

sion must be set aside as "erroneous as a matter of law." § 8–74–107(6)(d), C.R.S.2011. Accordingly, we remand to the Panel for its consideration of all factors relevant to Ormsby's relationship with Softrock, including whether he performed similar services for others. *Cf. Long View,* 197 P.3d at 300 (listing factors beyond those set forth in section 8–70–115(1)(c)). The Panel shall do so in the context of the hearing officer's finding that Softrock has overcome the presumption of employee status, unless the Panel concludes that this finding is not supported by the record.

¶ 27 The Panel's order is vacated and the case is remanded for further proceedings consistent with this opinion.

Judge CARPARELLI and Judge LICHTENSTEIN concur.