2012 COA 186

**WESTERN LOGISTICS, INC., d/b/a Diligent Delivery Systems, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado; and Division of Employment and Training, Employer Services–Integrity/Employer Audits, Respondents.**

**No. 11CA2461.**

Colorado Court of Appeals, Div. III.

Oct. 25, 2012.

Sherman & Howard, LLC, Heather Fox Vickles, Matthew M. Morrison, Denver, Colorado, for Petitioner.

No Appearance for Respondent, Industrial Claim Appeals Office.

John W. Suthers, Attorney General, John August Lizza, First Assistant Attorney General, Katie Allison, Assistant Attorney General, Denver, Colorado, for Respondent Division of Employment and Training, Employer Services–Integrity/ Employer Audits.

Opinion by Judge DAILEY.

¶ 1 In this unemployment tax liability case, petitioner, Western Logistics, Inc., doing business as Diligent Delivery Systems (Diligent), seeks review of an order of the Industrial Claim Appeals Office (Panel). The Panel affirmed a hearing officer's decision that services performed for Diligent by certain individuals constituted covered employment under section 8–70–115, C.R.S.2012. We affirm the Panel's order.

*I. Background*

¶ 2 Based on an audit covering the 2008 and 2009 calendar years, respondent, the Division of Employment and Training (Division), issued a liability determination concluding that approximately 220 delivery drivers (the drivers) were in covered employment with Diligent. Consequently, Diligent was required to report payments made to the drivers and pay corresponding unemployment premiums.

¶ 3 Diligent appealed the liability determination. Following a lengthy evidentiary hearing, the hearing officer made extensive factual findings about the drivers, the nature of the services they provided, and Diligent's involvement in how the drivers provided those services.

¶ 4 The hearing officer found that, although Diligent and the drivers entered into written contracts designating the drivers as independent contractors, the evidence demonstrated that this purported independent contractor status was "not true in fact."

¶ 5 The hearing officer found that none of the drivers was "customarily engaged in a delivery business." This finding was based, in part, on additional findings that the drivers performed few, if any, delivery services to others at the same time they were performing services for Diligent. It was also based on findings that Diligent paid the drivers under their own names and that, although some of the drivers had businesses, their businesses did not provide services similar to those provided to Diligent.

¶ 6 The hearing officer also found that when the drivers provided delivery services to Diligent's clients, they "received direction and control" from Diligent. Consequently, the hearing officer concluded that the drivers were in covered statutory employment with Diligent.

¶ 7 On review, the Panel concluded that, because the written contracts the drivers signed allowed for termination of the contract on seven days' notice, they did not satisfy section 8–70–115(1)(c)(IV), C.R.S. 2012, and, therefore, did not create a rebuttable presumption of an independent contractor relationship under section 8–70–115(2),

C.R.S.2012. Accordingly, the Panel determined that it had been "Diligent's burden [at the hearing] to establish that the drivers [were] both free from control and direction and customarily engaged in an independent business."

¶ 8 Relying primarily on the hearing officer's evidentiary findings that the drivers did not provide contemporaneous similar services for others besides Diligent, the Panel affirmed the hearing officer's ultimate finding that Diligent failed to show the drivers were customarily engaged in independent delivery businesses. The Panel further noted that, because this failure was itself sufficient to show the drivers were not independent contractors, it was "unnecessary to address whether the hearing officer correctly found that [the drivers] were subject to control and direction." Diligent now appeals the Panel's order.

## II. Analysis

¶ 9 Diligent contends that the Panel's decision is not supported by substantial evidence. It contends the hearing evidence established that the drivers were independent contractors. We conclude that the Panel properly upheld the hearing officer's decision that the drivers were engaged in covered employment under the statutory scheme.

### A. Applicable Law

¶ 10 Under section 8–70–115(1)(b), C.R.S. 2012, services performed by an individual for another "shall be deemed" covered employment for unemployment tax liability purposes, unless the putative employer demonstrates both that (1) the individual "is free from control and direction in the performance of the service," and (2) the individual "is customarily engaged in an independent trade, occupation, profession, or business related to the service performed."

¶ 11 To rebut the presumption of an employment relationship, the putative employer must satisfy both the "free from control and direction" requirement and the "independent business" requirement of section 8–70–115(1)(b). *See Long View Sys. Corp. USA v. Indus. Claim Appeals Office*, 197 P.3d 295, 298 (Colo.App.2008).

¶ 12 Whether a putative employer has met this burden is a question of fact, and we will not disturb the agency's findings if they are supported by substantial evidence. *See Allen Co. v. Indus. Comm'n*, 762 P.2d 677, 680 (Colo.1988); *see also Long View*, 197 P.3d at 298. We will uphold the Panel's decision if the Panel applied the law correctly, and its decision is supported by the hearing officer's factual findings. *See* § 8–74–107(6)(c)–(d), C.R.S.2012.

### B. Independent Business Requirement

¶ 13 The statutory requirement that the worker be "customarily engaged" in an independent trade or business is designed to assure that an individual whose income is almost entirely dependent upon continued work for a single entity is protected from the vagaries of involuntary unemployment, irrespective of the individual's status as a servant or independent contractor under the common law. *See Long View*, 197 P.3d at 299; *Speedy Messenger & Delivery Serv. v. Indus. Claim Appeals Office*, 129 P.3d 1094, 1096 (Colo.App.2005).

¶ 14 To show that a worker is "customarily" engaged in an "independent" trade or business related to the services performed, the putative employer must demonstrate that the worker is engaged in a separate business venture, other than the provision of services for the putative employer. *SZL, Inc. v. Indus. Claim Appeals Office*, 254 P.3d 1180, 1183 (Colo.App.2011); *see Long View*, 197 P.3d at 300. Consequently, several cases from divisions of this court have held that to satisfy the "independent business" requirement, the worker must have actually and customarily provided similar services to others at the same time he or she worked for the putative employer. *See Speedy Messenger*, 129 P.3d at 1098; *Barge v. Indus. Claim Appeals Office*, 905 P.2d 25, 27 (Colo.App.1995); *Carpet Exch. of Denver, Inc. v. Indus. Claim Appeals Office*, 859 P.2d 278, 282 (Colo.App.1993); *see also Locke v. Longacre*, 772 P.2d 685, 687 (Colo. App.1989) (although simultaneous "similar services to others" need not be shown to have occurred hourly, daily, or weekly, "nev-

ertheless, actual and customary independent business or professional activity must be demonstrated by evidence"). The "performance of occasional or insubstantial services for others does not establish that a worker is 'customarily' engaged in an independent trade, occupation, or business." *Barge*, 905 P.2d at 27.

¶ 15 More recently, divisions of this court have held that, if the worker provided services to the putative employer for a relatively short period, a failure to show that the worker provided contemporaneous similar services for others is not dispositive. *See SZL*, 254 P.3d at 1183–84 (three-month work period); *Long View*, 197 P.3d at 300 (three-month work period). However, these divisions continued to acknowledge the decisions holding that to satisfy the "independent business" requirement, ordinarily the worker must be shown to have actually, customarily, and contemporaneously provided similar services to others. *See SZL*, 254 P.3d at 1183; *Long View*, 197 P.3d at 299–300.

¶ 16 Here, it was undisputed that the drivers were working under twelve-month contracts that would be automatically extended an additional twelve months unless either party provided contrary written notice. Hence, the drivers did not provide services to Diligent over a short period so as to implicate the exception described in *Long View* and *SZL*.

¶ 17 Moreover, the hearing officer found that the drivers "did not work for any other persons providing these types of services as independent contractors during ... [the time] they provided services for [Diligent]" and that the drivers "were wholly dependent on the continued employment of [Diligent]."

¶ 18 Substantial, albeit conflicting, evidence, supports these evidentiary findings. Consequently, they are binding on review. *See Allen*, 762 P.2d at 680; *see also Tilley v. Indus. Claim Appeals Office*, 924 P.2d 1173, 1177 (Colo.App.1996).

¶ 19 These findings, in turn, support the hearing officer's ultimate finding that Dili-

gent failed to meet its burden of demonstrating that the drivers were truly engaged in independent delivery businesses. *See Speedy Messenger*, 129 P.3d at 1098; *Barge*, 905 P.2d at 27.

### 1. Softrock Decision

¶ 20 Recently, in *Softrock Geological Services v. Industrial Claim Appeals Office*, 2012 COA 97, 328 P.3d 222, a division of this court declined to follow the decisions holding that a worker's lack of contemporaneous similar services for others is generally dispositive of the "independent business" requirement.[1] The *Softrock* division concluded that, even in non-short-term work scenarios, "whether the worker ... provided similar [contemporaneous] services to others is at most only one consideration." *Softrock*, ¶ 16. It further concluded that whether the worker is engaged in an independent business "involves a multi-factor test" and that no single factor is determinative. *Softrock*, ¶ 10.

¶ 21 We are not persuaded to follow *Softrock*'s departure from prior decisions holding that a worker's lack of contemporaneous similar services for others may generally be dispositive of the "independent business" requirement. In concluding that an absence of similar services is, at most, a single factor, and that the inquiry "involves a multi-factor test," *Softrock* relies on the statutory factors listed in section 8–70–115(1)(c), C.R.S.2012. However, that portion of the statute and the factors listed therein, address a different issue—whether a written document signed by a putative employer and a worker creates a rebuttable presumption of an independent contractor relationship. *See* § 8–70–115(2); *see also Long View*, 197 P.3d at 298–99; *Speedy Messenger*, 129 P.3d at 1097.

¶ 22 In concluding that no single factor can be determinative, the *Softrock* division relies on language from *Dana's Housekeeping v. Butterfield*, 807 P.2d 1218, 1220 (Colo.App. 1990). However, that case addressed the more general inquiry of whether a person is considered an employee or an independent contractor for purposes of the workers' com-

---

1. *Softrock* was announced after the hearing officer's decision and the Panel's order in this case. We asked the parties to provide supplemental briefing on what effect, if any, the *Softrock* decision might have on the outcome of this case.

pensation statutes. *See id.* It did not address the narrower issue of the "independent business" requirement contained in section 8–70–115(1)(b).

¶ 23 We acknowledge that some of the factors in section 8–70–115(1)(c) may be relevant in determining whether a worker was engaged in an independent business. *See SZL,* 254 P.3d at 1184; *Long View,* 197 P.3d at 300. However, nothing in the plain language of section 8–70–115(1)(c) requires a weighing of these factors in deciding the ultimate factual issue of whether the putative employer has met its burden of establishing that the worker is, "in fact," engaged in an "independent business." Nor, in our view, do the factors in section 8–70–115(1)(c) undermine existing case authority holding that a lack of contemporaneous similar work for others is generally dispositive of the independent business requirement. Indeed, a division of this court has held that the amendments adding sections 8–70–115(1)(c) and 8–70–115(2), pertaining to written documents, did not modify the substantive provisions of section 8–70–115(1)(b) setting forth the "independent business" and "control and direction" requirements. *See Home Health Care Prof'ls v. Colo. Dep't of Labor & Emp't,* 937 P.2d 851, 854 (Colo.App.1996).

¶ 24 We choose to follow the pre-*Softrock* line of authority holding that, in circumstances other than short-term work, to satisfy the "independent business" requirement, a worker must have actually and customarily provided similar services to others while working for the putative employer.

■ ¶ 25 We note, however, that even under the rule described in *Softrock,* in which a lack of contemporaneous similar work for others is merely a single non-dispositive factor, we would still affirm the rulings that Diligent failed to show the drivers were customarily engaged in independent businesses. Specifically, the hearing officer also found that (1) the drivers were paid in their own names, (2) the written contracts between Diligent and the drivers did not include business names, and (3) although some of the drivers performed other contemporaneous work, it was not similar work such that they could be

deemed to be engaged in true delivery businesses.

¶ 26 Again, because these evidentiary findings are supported by substantial evidence, they are binding on review. *See Tilley,* 924 P.2d at 1177. These findings also support the hearing officer's ultimate finding that Diligent failed to meet its burden concerning the "independent business" requirement. *See SZL,* 254 P.3d at 1184 (rejecting argument that "independent business" requirement was decided based solely on lack of contemporaneous work for others).

### 2. Remaining Drivers

¶ 27 Diligent further contends that the parties submitted specific evidence concerning only roughly ten percent of the drivers and that, as to the remaining drivers, the only evidence presented was the written contract stating that the drivers were engaged in a delivery business. Diligent contends that the "only permissible conclusion" is that these remaining drivers were in fact customarily engaged in independent businesses. We are not persuaded.

¶ 28 Diligent's argument ignores the hearing officer's express finding that the written contracts did not accurately describe the relationship between Diligent and the drivers.

¶ 29 Diligent implicitly contends that the hearing officer improperly applied this key finding about the contracts to all of the drivers. However, this was an issue of evidentiary weight within the hearing officer's discretion. *See Tilley,* 924 P.2d at 1177. Moreover, we note that in the pre-hearing proceedings and during the hearing itself, Diligent did not raise any procedural objection to having the matter decided based on testimony from a predetermined number of representative witnesses and representative evidence. Consequently, it cannot now be heard to complain of this procedure on appeal. *See Magin v. Div. of Emp't,* 899 P.2d 369, 371 (Colo.App.1995) (issues not raised in administrative proceedings before hearing officer were not preserved for review).

### C. Lack of Control and Direction Requirement

¶ 30 The determination that the drivers were engaged in statutory employment is separately and independently sustainable based on the hearing officer's conclusion that Diligent failed to show the drivers were free from its control and direction.

¶ 31 For purposes of determining whether services are covered employment, the term "control and direction" means a general right to control. *See Allen*, 762 P.2d at 680; *see also Carpet Exch.*, 859 P.2d at 281 (distinguishing between control over "end result" of project and "means and methods of accomplishing that result"); *Rent–A–Mom, Inc. v. Indus. Comm'n*, 727 P.2d 403, 405 (Colo.App.1986) (control and direction means overall right to control worker's actions).

¶ 32 Here, the hearing officer found that Diligent's control and direction of the drivers included the following:

- Diligent set the price for the drivers' services and, if a driver did not accept it, he or she would not be hired.

- Diligent determined the clients for whom the drivers would provide services and directed the drivers to report to those clients.

- Drivers were required to call in every morning to establish their availability, and if they failed to call in, a dispatcher would call to "find out where they" were.

- Diligent required drivers to have compatible cell phones or radios so that dispatchers could track their whereabouts on GPS and contact them and direct them where to go.

- Diligent requested, and later directed, the drivers to register trade or business names with the Secretary of State.

¶ 33 Because substantial, albeit conflicting, evidence supports these evidentiary findings, we must accept them. *See Tilley*, 924 P.2d at 1177. Moreover, they support the conclusion that Diligent failed to show the drivers were free from its direction and control. *See Nat'l Claims Assocs. v. Div. of Emp't*, 786 P.2d 495, 496–97 (Colo.App.1989) (upholding finding of direction and control based, in part, on evidence that putative employer set workers' compensation structure); *Wagner & Sons Constr., Inc. v. Pagels*, 720 P.2d 987, 990 (Colo.App.1986) (fact that workers were informed of specific tasks needing completion supported finding of control and direction); *Weld Cnty. Kirby Co. v. Indus. Comm'n*, 676 P.2d 1253, 1257 (Colo.App.1983) (fact that dealers reported to putative employer on daily basis and were provided sales outlines was indicative of control and direction).

¶ 34 In addition to these findings, it was undisputed that the written contracts allowed for termination of the contract "at any time" on seven days' notice. This ability to terminate the relationship also demonstrates Diligent's right to control the drivers. *See Allen*, 762 P.2d at 680–81 (power to terminate contract for personal service at any time without liability is important factor in determining whether individual is free of control and direction "because the right immediately to discharge involves the right of control"); *Weld Cnty. Kirby Co.*, 676 P.2d at 1257 (power to terminate agreement with dealers was particularly strong indicator of control).

¶ 35 In sum, we conclude the record supports the hearing officer's and the Panel's determinations that the drivers were in covered employment.

¶ 36 The Panel's order is affirmed.

Judge ROY and Judge RICHMAN concur.