2014 COA 63

**VISIBLE VOICES, INC., Petitioner,**

**v.**

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Division of Unemployment Insurance, Respondents.**

**Court of Appeals No. 13CA1514**

Colorado Court of Appeals,
Div. VII.

Announced May 8, 2014

Ogborn Mihm, LLP, Anna N. Martinez, Thomas D. Neville, Denver, Colorado, for Petitioner.

No Appearance for Respondent Division of Unemployment Insurance.

Opinion by JUDGE J. JONES

¶ 1 In this unemployment compensation tax liability case, petitioner, Visible Voices, Inc. (Visible), seeks review of a final order of the Industrial Claim Appeals Office (Panel). The Panel reversed, in part, a hearing officer's decision that services performed for Visible by thirteen individuals (the workers) did not constitute covered "employment" under the Colorado Employment Security Act (CESA) because the workers performed those services as independent contractors. The Panel determined that only two of the workers performed the services as independent contractors and that the remaining eleven workers were Visible's statutory employees.

¶ 2 We affirm the portion of the Panel's order holding that the two workers were independent contractors. However, we set aside the remaining portion of the Panel's

order and remand with directions to reinstate the hearing officer's decision that the remaining eleven workers also provided their services to Visible as independent contractors. In so doing, we reject the Panel's reliance on a single factor—whether the eleven workers regularly provided similar services to others while they were providing services to Visible—to determine whether those workers were engaged in an independent trade or business. We conclude instead that all relevant circumstances must be considered in making this determination.

## I. Background

¶ 3 Visible provides "Computer Assisted Realtime Translation"

¶ 4 (CART) services under contracts with various clients, including state agencies and courts. It supplies its clients with "CART providers, or captionists, who perform live word-for-word speech-to-text translation for the deaf and hearing impaired." Visible entered into agreements with the workers in which they agreed to provide CART services to Visible's clients as independent contractors.

¶ 5 The Division of Employment and Training (Division) issued a liability determination concluding that the workers' services for Visible amounted to covered employment and that Visible was, therefore, required to pay applicable unemployment compensation taxes on those services.

¶ 6 Visible appealed the deputy's decision. Following an evidentiary hearing, the hearing officer determined that the workers were independent contractors because they performed the services free from Visible's control and direction, and were customarily engaged in an independent trade, occupation, profession, or business related to the CART services they performed.

¶ 7 The Division appealed the hearing officer's decision. The Panel upheld the hearing officer's determination that the workers were free from Visible's control and direction. However, the Panel remanded for further findings concerning whether the workers were customarily engaged in an independent trade or business providing CART-related services.

¶ 8 On remand, the original hearing officer was unavailable and a different hearing officer reviewed the evidence and entered a new decision. The hearing officer also determined that the workers were not Visible's employees because they were free from Visible's control and direction and were customarily engaged in independent businesses related to providing CART services.

¶ 9 The Division again appealed. The Panel adhered to its previous ruling that Visible did not control and direct the workers. However, contrary to the second hearing officer's decision, the Panel determined that eleven of the thirteen workers were not customarily engaged in independent businesses related to the CART services. In making that determination, the Panel relied largely on a lack of evidence that those workers had regularly provided CART services to others besides Visible while working for Visible. It concluded that those eleven workers were in covered employment. Visible seeks review of the Panel's order.

## II. Discussion

### A. General Legal Standards

¶ 10 Under section 8–70–115(1)(b), C.R.S. 2013, services performed by an individual for another "shall be deemed" covered employment for unemployment tax liability purposes, unless the putative employer demonstrates both that (1) the individual "is free from control and direction in the performance of the service," and (2) the individual "is customarily engaged in an independent trade, occupation, profession, or business related to the service performed."

¶ 11 The statute places the burden of proof on the putative employer to demonstrate that both conditions exist to rebut the presumption of an employment relationship between the parties. *SZL, Inc. v. Indus. Claim Appeals Office*, 254 P.3d 1180, 1183 (Colo.App.2011); *Long View Sys. Corp. USA v. Indus. Claim Appeals Office*, 197 P.3d 295, 298 (Colo.App.2008). Whether a putative employer has met this burden is a question of fact, and we will not disturb the agency's

factual findings if they are supported by substantial evidence. *See Allen Co. v. Indus. Comm'n,* 762 P.2d 677, 680 (Colo.1988); *Long View,* 197 P.3d at 298. However, whether the Panel applied the correct legal standard or legal test raises a question of law that we review de novo. *See In re A.M.,* 251 P.3d 1119, 1121 (Colo.App.2010) (whether a trial court applied the correct legal standard presents a question of law the appellate court reviews de novo); *see also Davison v. Indus. Claim Appeals Office,* 84 P.3d 1023, 1029 (Colo.2004) (appellate court reviews agency's conclusions of law de novo).

¶ 12 To establish that a worker is customarily engaged in an independent trade or business related to the services performed, a putative employer must show that the worker is engaged in a separate business venture, other than the provision of services for the putative employer. *See Long View,* 197 P.3d at 300.

### B. Provision of Services to Others

¶ 13 Visible contends that in considering whether the workers were engaged in an independent trade, occupation, profession, or business, the Panel erred by treating as dispositive the factor whether the workers provided similar CART services to others while providing services to Visible. Visible contends that the Panel should have applied a multi-factor approach as described in *Softrock Geological Services, Inc. v. Industrial Claim Appeals Office,* 2012 COA 97, ¶ 10, 328 P.3d 222 (*cert. granted* Mar. 25, 2013).

¶ 14 Prior to the *Softrock* decision, a line of cases from divisions of this court had held that to be engaged in an independent trade, occupation, profession, or business within the meaning of section 8–70–115(1)(b), a worker must have actually and customarily provided similar services to others while working for the putative employer. *See Speedy Messenger & Delivery Serv. v. Indus. Claim Appeals Office,* 129 P.3d 1094, 1098 (Colo.App. 2005); *Barge v. Indus. Claim Appeals Office,* 905 P.2d 25, 27 (Colo.App.1995); *Carpet Exch. of Denver, Inc. v. Indus. Claim Appeals Office,* 859 P.2d 278, 282 (Colo.App. 1993).

¶ 15 Departing from these cases, the *Softrock* division concluded it was incorrect to treat this "services to others" consideration as dispositive. Instead, it concluded that whether a worker is engaged in an independent and separate business venture other than providing services to the putative employer "involves a multi-factor test," and that a worker's provision of similar services to others is "at most only one consideration." *Softrock,* ¶¶ 10, 16.

¶ 16 Thereafter, in *Western Logistics, Inc. v. Industrial Claim Appeals Office,* 2012 COA 186, 328 P.3d 247 (*cert. granted* Mar. 25, 2013), another division of this court declined to follow *Softrock's* multi-factor approach. Instead, the division adhered to prior decisions holding that "in circumstances other than short-term work, to satisfy the 'independent business' requirement, a worker must have actually and customarily provided similar services to others while working for the putative employer." *Id.* at ¶ 24.

¶ 17 We conclude that a multi-factor approach is the proper framework for determining whether a worker is customarily engaged in an independent trade, occupation, profession, or business under section 8–70–115(1)(b). As the *Softrock* division noted, treating the "services to others" consideration as dispositive of this issue is inconsistent with the statutory scheme because (1) no such singlefactor test appears in the statutory language; (2) treating this consideration, or any other, as dispositive is difficult to reconcile with section 8–70–115(1)(c), which lists multiple factors for determining whether a worker is engaged in an independent trade or business; and (3) one of the factors listed in section 8–70–115(1)(c) actually provides that a worker may choose to work exclusively for a putative employer for a finite time period specified in a written contract. *Softrock,* ¶ 16; *see* § 8–70–115(1)(c)(I).

¶ 18 The *Softrock* division further noted that treating the "services to others" consideration as dispositive is flawed because it subjects putative employers to potential liability based on circumstances the putative employer cannot control and of which it may be unaware. *See Softrock,* ¶ 25.

¶ 19 The *Western Logistics* division criticized *Softrock*'s reliance on the factors in section 8–70–115(1)(c) because, in its view, that subsection, in conjunction with sections 8–70–115(1)(d) and 8–70–115(2), addresses "a different issue—whether a written document signed by a putative employer and a worker creates a rebuttable presumption of an independent contractor relationship." *Western Logistics,* ¶ 21. We are not persuaded by this criticism.

¶ 20 Subsections (1)(b) and (1)(c) of the statute do not address different issues; they address the same issue—proving an independent contractor relationship. Subsection (1)(b) establishes the presumption of an employment relationship and the legal standard for overcoming that presumption, while subsection (1)(c) describes how a putative employer may, through an agreement *or otherwise,* "evidence" the standard described in subsection (1)(b).

¶ 21 Contrary to the *Western Logistics* division's conclusion, subsection (1)(c) does not merely address "whether a written document signed by a putative employer and a worker creates a rebuttable presumption of an independent contractor relationship." *Western Logistics,* ¶ 21. It, in conjunction with subsection (2), addresses generally how a putative employer may prove an independent contractor relationship, provides not one but two means of doing so, and expressly makes a variety of factors relevant to the inquiry.

¶ 22 The first way a putative employer may prove an independent contractor relationship is by evidence of a written agreement including provisions (I)-(IX) noted in subsection (1)(c). Such a written agreement creates a rebuttable presumption of an independent contractor relationship. § 8–70–115(2). It logically follows that a worker can rebut the presumption by proving that, despite what the written agreement says, the factors identified in provisions (I)-(IX) do not exist. Thus, the factors identified in provisions (I)-(IX) are relevant to the inquiry whether an independent contractor relationship exists. Nothing in the statute suggests that one relevant factor—whether the work-er provided contemporaneous services to others—trumps all other factors.

¶ 23 A putative employer may prove an independent contractor relationship in the absence of a written agreement containing provisions (I)-(IX) by showing "by a preponderance of the evidence that the conditions set forth in" subsection (1)(b) have been satisfied. § 8–70–115(1)(c). The statute does not limit what factors are relevant to the inquiry. If the factors identified in provisions (I)(IX) of subsection (1)(c) are relevant to determining the effect of a written agreement between the parties, it follows that those factors are relevant in the context of a putative employer's effort to prove an independent contractor relationship in the absence of such a written agreement.

¶ 24 Consequently, we agree with *Softrock* that the factors listed in provisions (I)-(IX) of subsection (1)(c) may be relevant in determining whether a worker "is customarily engaged in an independent trade, occupation, profession, or business related to the service performed" under subsection (1)(b). *See Moffett v. Life Care Ctrs. of Am.,* 219 P.3d 1068, 1072 (Colo.2009) (when statutory provisions concern same subject matter or are part of common design, courts must read them together to give full effect to each).

¶ 25 However, to the extent *Softrock* holds that only the factors identified in subsection (1)(c)(I)(IX) are relevant to the inquiry, we decline to follow it. *See Valentine v. Mountain States Mut. Cas. Co.,* 252 P.3d 1182, 1195 (Colo.App.2011) (one division of the court of appeals is not bound by the decision of another division). Instead, we conclude that any relevant circumstance may be considered.

¶ 26 The statute identifies factors that may be relevant in many cases, but clearly, in some cases some of those factors may not be relevant. And just as clearly, other factors may be relevant to the determination in a given case whether a worker is engaged in an independent trade, occupation, profession, or business. Indeed, divisions of this court have recognized a number of such factors. *See Long View,* 197 P.3d at 300 (identifying as relevant whether the worker (1) maintained a business card, business listing, busi-

ness address, or business telephone number; (2) made a financial investment such that he or she could be vulnerable to financial loss in connection with performance of the service; (3) had his or her own equipment needed to perform the service; (4) determined the price of the service performed; (5) employed others to perform the service; and (6) carried liability or workers' compensation insurance); *Speedy Messenger*, 129 P.3d at 1098 (noting that two workers performing the services at issue did not advertise or have business cards); *Barge*, 905 P.2d at 27 (noting that workers did not maintain business addresses or telephone numbers).

¶ 27 Here, in its initial remand order, the Panel acknowledged *Softrock* but stated that it found *Western Logistics* "more persuasive." Additionally, in its final order, the Panel effectively ignored *Softrock's* multi-factor test by focusing almost exclusively on whether the workers performed CART services for others besides Visible.

¶ 28 We recognize that the Panel was faced with conflicting authority from different divisions of this court. However, we again emphasize our conclusions that (1) applying a multi-factor test—which accounts for all relevant circumstances—is the proper means to analyze whether a worker was customarily engaged in an independent trade, occupation, profession, or business; and (2) relying exclusively on whether a worker simultaneously provided similar services to others is inconsistent with the statutory scheme.

### C. Evidentiary Support for Hearing Officer's Decision

■ ¶ 29 Applying the multi-factor test in this case, we conclude that the record supports the hearing officer's determination that the eleven workers in question were customarily engaged in independent businesses related to the services provided to Visible.

¶ 30 The hearing officer applied a multi-factor approach, making a series of record-supported evidentiary findings that, in turn, support his ultimate finding that the workers were engaged in separate and independent business ventures providing CART services. Those findings included the following:

- Each of the workers was a sole proprietor providing CART services on a freelance basis.

- The workers were free to accept or decline assignments from Visible at their discretion.

- The workers could negotiate their compensation rate.

- The workers submitted invoices to Visible after completing an assignment.

- The workers were neither expected nor required to provide services only to Visible, and Visible encouraged them to accept available work from others. *See* § 8–70–115(1)(c)(I).

- Many of the workers provided similar services to others besides Visible.

- There were periods of up to four consecutive months in which Visible offered no assignments to any of the workers.

- The workers supplied and maintained their own equipment. *See* § 8–70–115(1)(c)(VI).

- Visible provided no training to the workers. *See* § 8–70–115(1)(c)(V).

¶ 31 Additionally, Visible's owner testified, without contradiction, that she did not combine Visible's business operations with any of the workers' businesses. *See* § 8–70–115(1)(c)(IX).

¶ 32 Although the hearing officer found that Visible paid the workers by the hour, he further found that "it would not be feasible to pay [them based] on a fixed … contract rate because it would be impossible to predict exactly how long a given court session or other occasion might last." Similarly, although many of the workers were paid using their individual names rather than trade or business names, the hearing officer found that this did "not persuasively demonstrate that the workers were not independently engaged in a related, independent trade or business" because the "standard in the industry is that individual providers work on a freelance basis, most commonly as sole proprietors."

¶ 33 The Panel concluded that "the hearing officer gave undue weight to the fact that V[isible] did not preclude the workers from working for others" and "[i]n effect ... found the workers were independent contractors regardless of whether they had an independent business." The record does not support this characterization of the hearing officer's decision. To the contrary, the hearing officer made numerous findings supporting his determination that the workers were, in fact, engaged in independent businesses providing CART services.

¶ 34 Though the record does not contain evidence establishing that all of the workers provided similar services to others besides Visible during the applicable audit period, unlike the Panel, for the reasons discussed above, we are not persuaded that this one circumstance is controlling. *See Softrock,* ¶¶ 10, 16.

¶ 35 Because substantial evidence supports the hearing officer's ultimate determination that Visible met its burden of showing that the workers were free from control and direction and were customarily engaged in an independent business related to their provision of CART services, we will not disturb that determination on review. *See Allen Co.,* 762 P.2d at 681; *see also Long View,* 197 P.3d at 298.

### III. Conclusion

¶ 36 The portion of the Panel's order determining that two of the thirteen workers were independent contractors and not in covered employment with Visible is affirmed. The remainder of the Panel's order is set aside, and the case is remanded with instructions to reinstate the hearing officer's decision determining that the remaining eleven workers were also not in covered employment with Visible.

JUDGE FOX and JUDGE NAVARRO concur.