2015 COA 149

**DIVISION OF UNEMPLOYMENT INSURANCE EMPLOYER SERVICES–INTEGRITY/EMPLOYER AUDITS, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO and Marbles Kids, Inc., Respondents.**

**Court of Appeals No. 15CA0453**

Colorado Court of Appeals,
Div. II.

Announced October 8, 2015

3.   McDonnell also concedes that he has not preserved an objection to the sanctions on appeal.

Cynthia H. Coffman, Attorney General, Krista Maher, Assistant Attorney General, Denver, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

Stutheit & Garland, P.C., Brian K. Stutheit, Littleton, Colorado, for Respondent Marbles Kids, Inc.

Opinion by JUDGE DAILEY

¶ 1 The sole issue presented in this appeal is whether, for purposes of assessing unemployment insurance tax premiums under the Colorado Employment Security Act (CESA), certain individuals who performed acting and modeling services (artists) were employees of a talent agency that helped them obtain acting and modeling jobs. The Industrial Claim Appeals Office (Panel) issued an order concluding that no such employment relationship existed, and thus, that no premiums were owed. Because we agree with the Panel's analysis, we affirm its order.

## I. Factual Background

¶ 2 Respondent, Marbles Kids, Inc., which includes a related entity called Lincoln Talent (Marbles), is a talent agency that represents individuals seeking acting and modeling work. The vast majority of the artists are children.

¶ 3 Marbles is contacted by clients seeking actors or models for assignments. The client notifies Marbles of specific features it is searching for in an acting or modeling role, and Marbles forwards the client a list of artists from its database who fit those features. The client then selects the artists it wishes to audition, and Marbles contacts those artists to inform them of the upcoming audition. The artists are free to turn down auditions.

¶ 4 The artists, or in the case of child artists, their parents, sign contracts providing that Marbles will receive a percentage commission on any assignments booked through Marbles. Artists are required to bring vouchers to job sites to be paid for their work. The clients pay Marbles, and Marbles then deducts its commission and pays the artist the remaining amount.

¶ 5 Artists, at their own expense, are required to provide Marbles with "tools of the trade" such as photographs, portfolios, voice-over recordings, and demo tapes. For a separate fee, Marbles also provides training workshops to the artists.

## II. Procedural History

¶ 6 Petitioner, the Division of Unemployment Insurance, Employer Services–Integrity/Employer Audits (Division), issued a liability determination that the artists were in covered employment with Marbles, and that Marbles was therefore required to pay unemployment insurance tax premiums on amounts paid to the artists.

¶ 7 Marbles appealed. Following an evidentiary hearing, the hearing officer determined that (1) Marbles exercised direction and control over how the artists obtained work; (2) the artists were not engaged in independent businesses; and (3) the artists performed their acting and modeling services for, or on behalf of, Marbles. Based on those determinations, the hearing officer concluded that an employment relationship existed and that Marbles was responsible for paying the tax premiums.

¶ 8 On review, the Panel did not disturb the hearing officer's evidentiary findings. However, it concluded that those findings, and the record as a whole, established that the artists were not performing services for Marbles, but rather for Marbles' clients who actually conducted the auditions and selected and hired the artists for the various jobs. Consequently, the Panel concluded that the artists were not Marbles' employees and that

Marbles was not required to pay the tax premiums.

## III. Discussion

¶ 9 The Division contends the Panel erred in concluding that no employment relationship existed. It argues that, contrary to the Panel's ruling, the artists were performing acting and modeling services for Marbles. We disagree.

¶ 10 Section 8–70–115(1)(b), C.R.S. 2015, defines employment under CESA. As a threshold matter, it requires a showing that a "service [has been] performed by an individual for another." *Id.* CESA does not define the term "service." However, for purposes of the statutory scheme, "service" has been defined as " 'an act done for the benefit or at the command of another.' " *Magin v. Div. of Emp't,* 899 P.2d 369, 370 (Colo.App. 1995) (quoting *Weld Cnty. Kirby Co. v. Indus. Comm'n,* 676 P.2d 1253, 1256 (Colo.App. 1983)).

¶ 11 The Division contends that the artists perform their acting and modeling services "at the command" of Marbles. We are not persuaded. To the contrary, the hearing officer found, and the record establishes, that the artists are free to reject auditions or assignments from Marbles' clients. And while Marbles decides which artists' names it will forward to the client, that decision is based on the client's descriptions, and it is the client who ultimately decides whether an artist will be hired to perform work and who that artist will be. Under these circumstances, we conclude that the artists do not perform services "at the command" of Marbles.

¶ 12 The Division also contends that the artists perform the services "for the benefit of" Marbles. Although this presents a closer question, we again disagree with the Division.

¶ 13 The Division notes that Marbles "benefits" from the artists' work and that Marbles' "main source of income consists of the fees collected" from the artists. It also notes that the artists' performances can either enhance or weaken client impressions of Marbles.

¶ 14 We acknowledge that Marbles generally derives a benefit from the artists' efforts when they perform acting or modeling jobs for Marbles' clients. However, the existence of that benefit does not mean that the artists were performing services "for the benefit of" Marbles so as to constitute employment.

¶ 15 In our view, the word "for" and the phrase "for the benefit of" connote a purposeful or intended benefit and not an inadvertent one. Indeed, "for" is defined as a function word to indicate "purpose," "an intended goal," or "the object or recipient" of an activity. *Merriam–Webster's Collegiate Dictionary* 488 (11th ed. 2004). "In ordinary usage, if something is done 'for the benefit of' x, it is done for the purpose of benefitting x. If something is not done for the purpose of benefitting x but has that unintended effect, it cannot be said that it was done 'for the benefit of' x." *Reich v. Compton,* 57 F.3d 270, 279 (3d Cir.1995).

¶ 16 At the hearing, the parties presented no evidence that the artists perform their acting or modeling work for the purpose of benefitting Marbles. None of the artists or parents who testified indicated that the artists provide services to or "for" Marbles. One artist specifically testified that she did not provide services to Marbles. Another testified that, in her view, Marbles worked for her. A parent of two artists testified that "Marbles is an agent working for my children." And Marbles' owner testified that the artists do not give Marbles services of any kind and that she works for the artists.

¶ 17 The relationship contemplates that Marbles does not hire the artists as employees but rather arranges for them to provide services for third parties. This relationship is spelled out in the "agency agreement" in which each artist authorizes Marbles to be his or her "sole agent and manager" in Colorado. As the Panel noted,

the service being performed [by the artists] is indeed for another, but that other entity is the client, not Marble[s]. The record shows it is the client that conducts the audition and makes its hiring decision based on what it sees in that process. The client then undertakes to give the actor the direction and control required to complete

the production, commercial, or modeling assignment. The client is also the beneficiary of the [artists'] services. The service is being performed by the [artist] for the client. The artist is not performing a service for Marble[s].        .

¶ 18 The General Assembly has created limited exceptions to the general requirement that for an entity to be deemed an employer, a worker must have provided services specifically for that entity. These exceptions involve temporary help contracting firms and employee leasing companies. *See* § 8–70–114(2), C.R.S. 2015; § 8–73–105.5, C.R.S. 2015. However, to fall within these statutory exceptions, a specific contract must exist between the employee leasing company or temporary help contracting firm on the one hand and the work-site employer or third party on the other. *See* § 8–70–114(2)(a)(II), (V), (VI); § 8–73–105.5(2). Because there is no evidence in this case that such a contract existed between Marbles and its various clients, these exceptions do not apply. *See* § 8–70–114(2)(d) (providing that if an employee leasing company does not meet the relevant statutory requirements, the work-site employer is deemed to be the employing unit).

¶ 19 In support of its argument that the artists performed services for Marbles, the Division relies on *Gross v. Employment Department*, 237 Or.App. 671, 240 P.3d 1130 (2010). In that case, a computer repair referral business (Rent–A–Nerd) was deemed an "employer" of various computer repair technicians affiliated with the business. *Id.* at 1140. Because Rent–A–Nerd largely dictated how the technicians provided services to customers and also benefitted from those services, the court in *Gross* was persuaded that the technicians were providing services "for" Rent–A–Nerd by providing services on its "behalf" or at its "command." *Id.* at 1137–39.

¶ 20 Although there are certain factual similarities between this case and *Gross*, there are also several critical differences. First, in *Gross*, Rent–A–Nerd selected the actual technician who would perform the repair service for a client. *Id.* at 1132. In contrast, here, Marbles merely sends the client a list of artists, and the client then holds auditions and decides whom, if anyone, to hire. Second, Rent–A–Nerd set a "common fee structure for the technicians," *id.* at 1139, whereas in this case it was undisputed that either the client set the fee an artist would receive, or the fee was subject to negotiation between the client and artist with Marbles negotiating on the artist's behalf.

¶ 21 Further, in *Gross*, technicians not wishing to accept an assignment were required to promptly call Rent–A–Nerd so it could find another technician. *Id.* at 1132. The technicians were also required to call Rent–A–Nerd every morning to report their availability and any existing work they had scheduled. *Id.* The court noted that Rent–A–Nerd "remained involved in the relationship between the technician and the customer throughout its duration." *Id.* at 1139. In contrast, here, once Marbles sends the client a list of artist names and informs the artists of scheduled auditions, it is generally no longer involved (other than to possibly receive and distribute payment if a Marbles artist is eventually hired). It is the client, not Marbles, who exclusively dictates or commands how the acting or modeling services are performed.

¶ 22 Given these key differences and based on our previous discussion, we conclude that *Gross* is inapposite.

### IV. Conclusion

¶ 23 Because the artists did not perform acting or modeling services for Marbles, Marbles was not an employer of the artists and they were not Marbles' employees. Consequently, Marbles was not required to pay unemployment insurance tax premiums on the amounts it paid the artists after deducting its agent commissions.

¶ 24 The Panel's order is affirmed.

JUDGE BOORAS and JUDGE NAVARRO concur.